## McMurtrie v. Riddell.

1. In this state a pre-existing indebtedness is a sufficient consideration to support a purchase of real estate, either at private or judicial sale, and the person so purchasing will be regarded as a *bona fide* purchaser. Such transactions are, however, subject to the same tests as to good faith and regularity generally as are other contracts and sales.

2. A deed of land which is executed before a judgment is rendered against the owner, but is not recorded until after a judicial sale of the land is had under the judgment, and the sheriff's certificate of sale is recorded, though recorded before the recording of the sheriff's deed, at the expiration of the period of redemption, will not, under Gen. St. § 215, avail against the purchaser at the judgment sale without notice; the record of the sheriff's deed relates back to the record of the certificate of sale.

*Error to District Court of San Juan County.*

This was an action brought by Riddell against McMurtrie, to remove a cloud from the title held by plaintiff to certain lots in the town of Silverton, in San Juan county. Riddell claims to have acquired title, through a judicial sale, against one Wightman, their former owner. It was admitted on the trial of the present action that the plaintiff recovered a judgment against said Wightman in the district court of San Juan county for the sum of $500, and costs of suit, September 27, 1880; that execution issued, and was levied on said lots as the property of Wightman, October 19, 1880; and that the same were

duly sold as the property of said judgment debtor, November 15, 1880, and purchased by the plaintiff, his bid being credited upon the execution, and not otherwise paid; also that the sheriff, on making said sale, issued to the plaintiff a certificate of purchase, who caused a copy thereof to be recorded as required by statute. Upon the expiration of the time for redemption, none of the lots having been redeemed from said sale, a sheriff's deed therefor was executed to the plaintiff, bearing date August 16, 1881, which was recorded September, 16, 1881. The title of record stood in the name of the judgment debtor, Wightman, until August 10, 1881, when a deed from him to the plaintiff in error, McMurtrie, was filed for record, the same being dated and acknowledged December 22, 1879. This is the deed which constituted the alleged cloud on plaintiff Riddell's title. The plaintiff denied all knowledge of this deed, actual or otherwise, prior to the date of its record, August 10, 1881, and therefore prayed that it be declared void as to him, and canceled of record. The answer admits most of the allegations of the complaint, but makes the following points by way of defense, viz.: That Riddell paid no *new* consideration for said lots when he bought them at the sheriff's sale, his bid being credited on his execution, and that Wightman was not the real or lawful owner of the lots at the time of the levy of plaintiff's execution, October 19, 1880. The answer avers that Wightman was the owner in fee-simple on December 22, 1879, and that he sold and conveyed them to the defendant on that day, in consideration of the sum of $800, which sum the defendant paid at the time, of which transaction the plaintiff had notice prior to his purchase at the sheriff's sale; that the lots are unimproved and uninclosed, and have never since the 22d day of December, 1879, been actually occupied by either plaintiff or defendant. The principal part of the foregoing allegations of complaint and answer are then set out by the defendant by way of cross-com-

plaint. The latter pleading alleges that the judgment on which the lots were sold to the plaintiff never became a lien on the property, and it alleges that the certificate of sale and sheriff's deed to said Riddell constitute a cloud on defendant's title, which he asks to have removed. Riddell answered the cross-complaint, denying the title therein set up in McMurtrie; and, the cause having been submitted to the court upon the allegations of the parties and the evidence, the issues were found for Riddell, and a decree granted in accordance with the prayer of his complaint, at the June term, 1883.

The bill of exceptions shows that the following facts were admitted on the trial by both parties: The ownership of the lots by Wightman, December 22, 1879; that he sold and conveyed them to the defendant below, on that day, in due form of law; that the defendant did not record his deed until August 10, 1881; the recovery of plaintiff's judgment against said Wightman, September 27, 1880; that no transcript of this judgment was ever filed for record, and no attempt made to make it a lien on the premises in controversy, except by the issuance and levy of an execution as set up in the pleadings; that the premises were sold under the said execution to the plaintiff, November 15, 1880, the amount of his bid being credited upon the execution, and not otherwise paid; that a certificate of sale was given the plaintiff, and by him duly recorded, and that pursuant to said sale a sheriff's deed was executed and delivered to the plaintiff, August 16, 1881. The plaintiff testified that he had no knowledge of the conveyance to defendant, or of any dealings between him and said Wightman, until he went to the recorder's office with his sheriff's deed for record, on the 16th day of August, 1881. The bill of exceptions further shows that it was agreed by the parties, in open court, that, if the court should decide the plaintiff to be entitled to the relief prayed for, it should find that he was in possession of the premises in controversy at the com-

mencement of the action; and, if the finding should be that defendant was entitled to the relief prayed for in the cross-complaint, then it should be found that he was in possession of the lots at the commencement of the suit. The finding and decree was for the plaintiff, and defendant has brought the cause here by writ of error for review.

Messrs. HUDSON and SLAYMAKER, for plaintiff in error.

Messrs. MONTAGUE and BEEBE, for defendant in error.

BECK, C. J. The main point in controversy is whether or not the facts of this case entitle the plaintiff below, Riddell, to the protection afforded by our statute to a *bona fide* purchaser of real estate at a sheriff's sale on execution. There is no controversy about the facts. Those not set out in the pleadings were agreed upon before the court below, and are preserved in the bill of exceptions. The question is, was the plaintiff a *bona fide* purchaser of the lots in controversy, within the spirit and meaning of that term as employed in section 215, p. 175, Gen. St.? This section provides that "all deeds, conveyances, agreements in writing of or affecting title to real estate, or any interest therein, and powers of attorney for the conveyance of any real estate, or any interest therein, may be recorded in the office of the recorder of the county wherein such real estate is situate, and from and after filing thereof for record in such office, and not before, such deeds, bonds and agreements in writing shall take effect as to subsequent *bona fide* purchasers, and incumbrancers by mortgage, judgment, or otherwise, not having notice thereof."

On the part of plaintiff in error it is contended that the judgment never became a lien upon the lots, and for that reason the sale on execution conveyed no title to the purchaser. We think this view of the statute is entirely too narrow to effect the intention of its framers. The

statute was not enacted for the benefit of lienholders and the owners of incumbrances upon real estate, only, but for all *bona fide* purchasers as well. Its plain meaning and intent is that no prior unrecorded conveyance or contract, affecting the title to land, shall take effect as to any subsequent *bona fide* purchaser without notice, or as to any one who in good faith, and without notice of a prior unrecorded deed or other instrument, acquires a lien or incumbrance on the same tract of land. It is not material, in order that a purchaser shall be entitled to the protection of this statute, that he shall be a judgment creditor, or that the land purchased shall be sold at sheriff's sale on execution. A simple contract creditor or purchaser may be equally within its terms. If a judgment creditor shall record a transcript of his judgment as soon as the same is entered up, he will immediately acquire a lien upon all his debtor's real estate situate within such county, and all that he may subsequently acquire during the existence of the lien, and which may not be exempt from execution. No subsequent transfer or incumbrance thereof by the debtor can prejudice the rights of such creditor.

In the case at bar this precaution was not taken. The judgment, therefore, did not become a statutory lien upon the real estate in question. But the deed from Wightman to McMurtrie not being recorded prior to the sheriff's sale, and Riddell having purchased the lots thereat without notice of this unrecorded conveyance, he occupies the position of a subsequent *bona fide* purchaser without notice.

A labored effort has been made to demonstrate that a judgment creditor who purchases property at sheriff's sale under his own judgment, and who pays no new consideration, but whose bid is merely credited upon the execution, is not a *bona fide* purchaser within the meaning of this statute. This is not an open question in this state, whatever diversity of judicial opinion may exist else-

where. The contrary rule was announced by this court in *Knox v. McFarran*, 4 Colo. 586, 596. That was an action of ejectment wherein two creditors of the same debtor were parties. They had both taken in payment of their respective demands the same town lot: Knox by a voluntary conveyance, and McFarran by a judicial sale. McGovney, the debtor, held a title bond for the lot in controversy, executed by one Rose, the owner in fee, and which bond McGovney assigned to Knox, as cashier of the First National Bank of Colorado Springs, in payment of a debt due from him to the bank. This assignment was made December 10, 1875, and on January 6, 1876, Rose executed a deed to Knox, as trustee for the bank, which was duly recorded. McFarran recovered a judgment against McGovney in the district court of El Paso county for the amount of his claim, $550, December 16, 1875. He filed an abstract of his judgment in the recorder's office of said county, December 27, 1875, and caused an execution to be levied upon the lot in controversy, February 7, 1876. In pursuance of this levy the lot was sold by the sheriff, March 16, 1876, McFarran becoming the purchaser, his bid of $545 being credited upon the execution. A sheriff's deed was executed to him in pursuance of this sale, February 12, 1877, which was recorded June 8, 1877. One of the questions presented in the ejectment case was the sufficiency of the consideration to support the assignment of the title bond to Knox, and the deed subsequently executed to him. Mr. Justice Elbert, in announcing the opinion of the court, stated the rule to be as follows: "Although there is a conflict of authority on the question, we regard it as the better doctrine that one who takes property in payment or security of a pre-existing debt is to be regarded as a purchaser for a valuable consideration." Upon a reversal of this cause, McFarran filed a bill in equity in the court below to enjoin the ejectment proceedings; alleging that he could not make his defense therein, and setting up ad-

ditional facts by which it was made to appear that McGovney was in possession of the lot in controversy and was the owner thereof on the 27th day of December, 1875, under a contract for a deed from Rose, when the abstract of McFarran's said judgment was filed for record; that said McFarran had then no information, by record or otherwise, that McGovney had transferred or parted with his interest in said property, the assignment of the title bond not having been placed on record. This bill being demurred to, and judgment having been given on the demurrer, this court held, on appeal from said judgment (5 Colo. 217), that these additional facts changed the equities; that the assignment of the contract to Knox not having been recorded, it did not take effect as against a subsequent *bona fide* purchaser without notice, McFarran being held to be such a purchaser at the execution sale.

It is unnecessary, therefore, for us to review the conflicting authorities on this question. The rule in this state is that a pre-existing indebtedness is a sufficient consideration to support a purchase of real estate, either at private or judicial sale, and the person so purchasing will be regarded as a *bona fide* purchaser. Such transactions, however, are subject to the same tests as to good faith and regularity generally as are other contracts and sales.

In the present case Riddell purchased the lots at sheriff's sale, November 15, 1880. It is conceded that the sheriff issued to Riddell, at the time of the sale, a certificate of purchase; also that a copy thereof was recorded as required by statute, which would be within ten days from the day of sale. All the statutory conditions were complied with, requisite and necessary to vest title in the purchaser at said sale, subject only to the right of redemption provided by law. The quitclaim deed from Wightman to McMurtrie not having been recorded, and the plaintiff having no knowledge of its existence at the

time of his purchase, it had not then taken effect as to him.

Another position assumed by plaintiff in error is that the judgment below was erroneous for the reason that, there being no judgment lien upon the lots in controversy, and McMurtrie's deed being recorded before the sheriff's deed was executed and recorded, the title vested in the plaintiff in error. We know of no principle of law upon which this proposition can be sustained. The validity of the sheriff's sale does not depend upon a judgment lien. It depends upon a valid judgment against Wightman, and the sale by the sheriff of property of which Wightman was the owner under the statute to a *bona fide* purchaser, and the recording of the latter's certificate of purchase. McMurtrie's deed could not take effect for any purpose, as against a *bona fide* purchaser without notice, until it was recorded. This was not done for a period of more than ten months after the certificate of sale to Riddell was recorded, nor until after the expiration of the time of redemption from the sheriff's sale. It is unnecessary to consider whether, under the circumstances of this case, the levy of the plaintiff's execution created a lien upon the lots in controversy. Notice of the plaintiff's purchase and rights was duly given by recording the sheriff's certificate of sale; and although the sheriff's deed to said purchaser was not executed and recorded until a few days after the recording of McMurtrie's deed, yet it is safe to say it then took effect by relation as of the day of sale. Had the plaintiff's judgment been made a lien upon the lots in manner provided by statute, the sheriff's deed would have related back to the inception of the lien. Ror. Jud. Sales, §§ 707, 708, 786.

This doctrine of relation is very fully considered in *Jackson v. Ramsay*, 3 Cow. 75, where numerous authorities are cited in support of the principles announced. The general principle of the doctrine is that, "where there

are divers acts concurrent to make a conveyance, estate or other thing, the original act shall be preferred, and to this the other act shall have relation." In accordance with this doctrine, it is held "that a deed executed in pursuance of a previous contract for the same premises is good, by relation, from the time of making the contract, so as to render valid every intermediate sale or disposition of the land by the grantees." It is held that a government patent for land will relate back to the date of the certificate of purchase, when necessary to sustain a sale made by the grantee, or a judicial sale of his interest in the land. *Carroll v. Safford*, 3 How. 441; *Landes v. Brant*, 10 How. 348.

The doctrine of relation, as stated in 5 Cruise, Real Prop. 510, 511, and quoted by Justice Catron in *Landes v. Brant, supra*, is as follows: "There is no rule better founded in law, reason and convenience than this: that all the several parts and ceremonies necessary to complete a conveyance shall be taken together as one act, and operate from the substantial part by relation." See, also, *Lessee of Boyd v. Langworth*, 11 Ohio, 235; *Oviatt v. Brown*, 14 Ohio, 285, and cases cited.

Giving due effect to our recording statute, the substantial act in the case at bar was the sheriff's sale. Wightman was then, by force of the statute, the owner of the lots as to a *bona fide* purchaser at the sheriff's sale. As we have seen, the defendant in error was such a purchaser, and upon the execution and recording of the sheriff's deed, it related back to the date of the sale, and perfected his title.

Perceiving no error in the judgment and decree of. the district court, it will be affirmed.

*Affirmed.*